WARD and THOMPSON VS HERNDON.

*As to the admissibility of hearsay evidence to shew the notoriety of a fact already proved to exist.*
*As to the cases in which evidence of good character is admissible.*

1. It is no departure from the rules of evidence, to prove the notoriety, in the neighborhood, of a fact, already proved to exist, to lay the foundation for an inference, that defendants were cognizant of that fact.

2. Thus, where defendants represented to plaintiff, an insolvent person, as being good for his contract, hearsay was held admissible to prove the notoriety of the insolvency in the neighborhood, and establish a presumption that defendants knew it, when they represented him otherwise.

3. Concerning the sufficiency of such evidence to establish fraud or deceit.—*Quare.*

4. Evidence of good character, is not admissible to repel the imputation of fraud, in civil proceedings: *aliter*, where character is directly put in issue, or on the trial of an offence against the State, involving moral turpitude, or on an indictment for breach of the peace.

In error to the Circuit Court of Greene.

In this case, the plaintiffs in error, had been sued and declared against in the Circuit Court of Greene, for representing a person notoriously insolvent, to defendant in error, "as perfectly good for his contracts." By means of which representation, defendant in error was induced to credit him in sundry sums of money, for goods, wares and merchandise,

which were due and unpaid, and which defendant was likely wholly to lose. The case was brought up on a bill of exceptions to the charge of the Court below, all of which will appear sufficiently in the opinion pronounced in this Court.

COLLIER, J.—The defendants in error declared against the plaintiffs in the Circuit Court of Greene, for falsely, fraudulently and deceitfully representing one Mungo D. Simpson, to be solvent and worthy of credit, under the influence of which representation, the plaintiffs sold to him goods, wares and merchandise, to a large amount. The cause was tried on the plea of "not guilty."

On the trial, a letter of the plaintiffs, was read to the jury, in which they represent to the defendant, Simpson as "an industrious, sober citizen of Greene, and perfectly good for his contracts," and oblige themselves to see defendant paid, for at least thirty dollars worth of leather, should he credit Simpson to that extent, for that article. It was proved, that Simpson was insolvent: witnesses were then examined, who proved, that he "was generally reputed to be insolvent in the neighborhood in which he and the defendants, (plaintiffs in error,) lived." To the introduction of which testimony, the defendants' counsel objected, which objection was overruled by the Court, and the evidence permitted to go to the jury; to which the defendants excepted." This was the only proof to shew that the plaintiffs in error, knew that Simpson was insolvent, at the time their letter was written. They then offered evidence to prove their "general, good cha-

racter for honesty," which being objected to, was not allowed. Whereupon the plaintiffs in error excepted, and here assign for error the several matters presented by the bill of exceptions.

Before examining the several decisions of the Circuit Court, we must settle what questions are reserved. The first point of exception relates alone to the admissibility of the evidence of general reputation touching Simpson's insolvency. The reading of the letter and the proof of actual insolvency, seems not to have been objected to. The second exception, is to the refusal to permit the plaintiffs in error, to prove their general character for honesty, &c.

1. In respect to the first point, it may be remarked, that the evidence of the reputation of Simpson's insolvency, was not introduced to shew that he was insolvent; that fact, the bill of exceptions states, had been already shewn, by unexceptionable proof. But it must be understood to have been offered, as it professes, to lay a ground for the jury to presume, that the plaintiffs were aware of Simpson's insolvency, inasmuch as the fact had a general notoriety in their neighborhood. In this view, the testimony, in our judgment, is free from objection, and is an entire different thing, from the proof of a fact, susceptible of being shewn by evidence, of a character more precise and definite.— The admission of hearsay evidence, may be considered, as somewhat of an anomaly in the general rules of testimony, and is indeed allowed but in few cases, which are held to form exceptions in themselves. Without pretending to determine,

WARD and THOMPSON *vs* HERNDON.

whether insolvency may be proved by reputation, we think it clear that if the fact be shewn, the notoriety of its existehce may be thus proved, without any departure from the rules of evidence.

Whenever it becomes necessary to trace the notice of a fact to any one, it is not *in general*, necessary, to do this by direct and positive proof, but it is competent to shew such a state of circumstances, as negative the absence of notice. And as no man is presumed to be so much of a recluse, as not to know what is generally known and talked of, in his neighborhood,—where positive proof cannot be had of such knowledge, it is competent to prove a circumstance, from which it is inferrible.

The bill of exceptions, does not present to us the sufficiency of the evidence, to shew a fraud and deceit, in the representation of the plaintiffs, but merely its admissibility. This question might have been reserved, had an instruction been asked for in the Circuit Court, on that point, and given adversely to the plaintiffs; but nothing of the kind seems to have been required of that Court, and if it was required, it is waived by the failure to except.

2. The second exception supposes, that wherever fraud is imputed to a party, it is competent to repel the imputation, by proof of the good character of him, whose integrity is thus arraigned.— Such, in our opinion is not the law. On the trial of an offence against the *State*, involving moral turpitude, a defendant may shew that he sustains a fair character. So, on an indictment for a breach of the peace, the defendant may shew that he is a

5 P.   49.

man of peaceable and orderly habits. But in *civil* proceedings, unless the character of a party be directly put in issue, by the proceeding itself, evidence of his general character is not admissible. (7 Conn. R. 119. Swift's Ev. 140. 2 Starkie Ev. 366. 1 Phil. Ev. 139. 5 Serg. & Rawle 352.)

In the case of *Anderson's exrs. vs Long* and others, (10 Serg. & Rawle, 55.) it was decided, that the accusation of a fraud in a civil proceeding, did not put the defendant's character in issue:— That, "putting *character in issue*," is a technical expression, and confined to certain actions, from the notice of which, the character of the parties or some of them, is of particular importance."— Such are the actions for *criminal conversation*, slander, &c.

These decisions are unopposed by any adjudicated case, so far as our research extends, save that of *Ruan vs Perry*, (3 Caine's R. 121) in which the Supreme Court of New York held, that in an action, charging the defendant with fraud, from mere circumstances, he may give evidence of his general good character. This is a solitary case, unsustained by authority, and however satisfactory such evidence might be, in leading the mind to a conclusion, we do not feel authorised to allow its admission, against such a weight of authority.

But such evidence is objectionable, as extending too largely the scope of the examination. A large majority of cases, impute to the defendant, the want of a proper sense of justice; and if in a case, such as the one at bar, it be allowable to defeat a

WARD and THOMPSON *vs* HERNDON.

recovery by evidence of good character, why not in other cases, permit a defendant to prove that his opinions and practice, indicate conscientiousness in all his dealings.

The bill of exceptions does not bring to our view, any tangible error.

The judgment is consequently affirmed.

HOPKINS C. J. not sitting.